THE BANK OF COMMERCE, Appellee, v. JASPAR N. BROYLES, et al., Appellants.

### SYLLABUS (BY THE COURT.)

1.  A motion for a peremptory instruction by both parties does not constitute a final waiver by either of jury trial where the evidence is conflicting and where ·after adverse ruling upon his request for peremptory instruction such party thereupon insists upon a trial by jury.

2.  It is error for the court to withdraw a case from the jury where the evidence as to liability is conflicting or the inferences on that subject to be drawn from the testimony are divergent.

3.  It is the duty of the court to direct a verdict where it would be bound to set aside a contrary verdict for want of testimony to support it.

4.  To render a fraudulent misrepresentation securing the signing of a promissory note available in defense against it it must be shown that the defendant was damaged by such misrepresentation.

5.  Where the plaintiff by knowingly false statements secured the signing by the defendants of a certain note but this latter was in satisfaction of a former note then due from the defendants for the same amount and on the same terms, which latter note thereby became and was cancelled and retired, such misrepresentation constitutes no defense to a suit on such second note, since the misrepresentation led simply to the defendants paying a debt due by them and they were thus in legal contemplation not damaged thereby.

6.  It is not error to refuse to submit to the jury issues not raised by the pleadings.

7.  The rule last stated is not rendered inoperative because the court may erroneously and over objection have admitted testimony upon such extraneous issues.

8. Payments subsequent to the filing of suit are not provable under the general issue but must be set up by supplemental pleading.

9. A dismissal seasonably entered by leave of the court as to one of a number of defendants severally liable does not discharge from liability his co-obligors and co-defendants.

Appeal from the District Court for Socorro County before FRANK W. PARKER, Associate Justice. Affirmed.

HOLT & SUTHERLAND. J. F. BONHAM, MARRON & WOOD for Appellants.

The contract of suretyship is a contract whereby one person engages to be answerable for the debt, default or miscarriage of another. 27 Enc. 431; Smith v. Sheldon, 24 Am. Rep. 533; McGee v. Manhattan Life Insurance Co., 92 U. S. 93; Griswold v. Hazard, 141 U. S. 260; 1 Story Eq. Jur., secs 234, 215; Franklin Bank v. Cooper, 36 Me. 180, 196; Smith v. Bank of Scotland, I Dow. 272, 292; Railton v. Matthews, 10 Clark & F. 934, 943; Small v. Currie, 2 Drew. 102, 114; Phillips v. Foxall, L. R. 7 Q. B. 666, 672; Davis v. London Insurance Co., 8 Ch. Div. 469; Daniel on Negotiable Instruments, 4 ed., sec. 1309.

In weighing the evidence on a directed verdict it must be considered in the light most favorable to the party against whom it is directed. Every fact or inference which the jury might have drawn therefrom must be considered as established in his favor. Mt. Adams, etc., Ry. Co. v. Lowery, 74 Fed. 463; N. Pa. Ry. Co. v. Commercial Bank, 123 U. S. 727.

Where a party intending to become a surety, requests the information, a creditor owes to the prospective surety the duty to make full disclosure of every fact material to the risk, and that for a failure to do so, the surety would not become bound. Owen v. Homan, 3 MacN. & G. 378; Casin v. Perth, 7 Grants Ch. 340; Blest v. Brown, 4 DeG. F. & J. 367; Remington Machine Co. v. Kezertee,

49 Wis. 409; Franklin Bank v. Cooper, 36 Me. 179, 39 Id. 542; Warren v. Branch, 15 W. Va. 21; Harrison v. Lumbermen, etc. Co., 8 Mo. App. 37; Etting v. Bank of U. S., 11 Wheat. 59.

"An alteration, whether material or not, in a contract which a third party has agreed in advance, to guarantee, will relieve him from liability on the guaranty." Page v. Krekey, 137 N. Y. 307; Martin v. Thomas, 65 U. S., 24 How. 315; Miller v. Sewart, 9 Wheat. 702; Neg. Inst. Law, sections 14, 52, 125; Boyhm v. Bank, 72 Ala. 262; Union Bk. v. Meeker, 4 La. An. 189.

Upon the issue of fraudulent representation, the whole of the conversation is competent as illustrative and explanatory of the transaction and intent. Wilburn v. Prior, 32 Atl. 474; Pedree v. Porter, 5 Allen, 324; Averill v. Wood, 78 Mich. 342; Thurman v. Mosher, 1 Hun. 344; Shelton v. Healey, 74 Conn. 255, 50 Atl. 742; Kingman v. Reineman, 166 Ill. 208; Bloomer v. Gray, Ind., 37 N. E. 819; Sullivan v. Langley, 128 Mass. 435; Cole v. High, 173 Pa. St. 590.

If defendants knew and consented to joining and becoming liable with the other parties, either as joint makers or co-sureties, then the conduct of the plaintiff releasing one of them from liability, constituted a material alteration of the note and operated to discharge the others. Daniel on Negotiable Instruments, 4 ed., sec. 1387; Wallace v. Jewell, 21 Ohio St. 163, 8 Am. Rep. 48; Hamilton v. Hooper, 46 Iowa 516, 26 Am. Rep. 161; Lunt v. Silver, 5 Mo. App. 186; Houck v. Grayham, 106 Ind. 195, 55 Am. Rep. 727; Gardner v. Welch, 5 El. & B. 82; Neg. Inst. Law, secs. 55, 125; Hodge v. Smith, 110 N. W. 192; Aukland v. Arnold, 111 N. W. 212.

Where by means of representations or otherwise, one person has intentionally led another to believe that a certain state of facts existed, and the other has rightfully acted on this belief, so that he will be prejudiced if the person so representing is permitted to deny the existence of such facts, such person is conclusively estopped to interpose a denial thereto. 11 Enc. Law 421; 22 Enc. 903 and cases cited.

Where property is placed in the hands of a debtor as collateral the amount thereof, if realized, lost or otherwise made applicable, must be applied upon the debt as against a person who is actually a surety, though appearing on the instrument as principal debtor. Grow v. Garlock, 97 N. Y. 81; Dibble v. Richards, 171 N. Y. 135; Brown v. Bank, 112 Fed. 901.

If one party owes another a debt and pays him money, the presumption of law is, that the money was intended to apply on the debt. Douglass v. Aspinwall, 2 Doug. 679; Hansen v. Kirthy, 11 Iowa 565; Daugherty v. Deeney, 45 Iowa 443; Succession of Hymel, La. An., 19 So. 742.

Sufficiency of defendant's answer. Morgan v. Southern Pac. Ry. Co., 17 L. R. A. 71; Maryland Insurance Co. v. Wood, 6 Cranch. 29; Elsie v. Metcalf, 1 Denio, 323; Stanton v. Wetherwax, 16 Barb. 259; Roger v. Murray, 3 Bosw. 357; Currie v. Crowells, 6 Id. 460; Rayl v. Hammond, 95 Mich. 22, 54 N. W. 696.

A party may ask for a peremptory instruction in his favor without depriving himself, if the court decides he is not entitled to it, of the right to have the jury pass on the controverted issue of fact in the case. Winchell v. Hicks, 18 N. Y. 558; Shults v. Sickles, 147 N. Y. 704; Bank v. Weston, 161 N. Y. 520; Minahan v. G. T. Ry., 138 Fed. 37, Mich.; McCormick v. National City Bank, 142 Fed. 132, Tex.; Beuttell v. Magone, 157 U. S. 154, Sup. Ct. 566, 39 L. ed. 654; Farnum v. Davidson, 3 Cush. 232; Lake Superior Iron Co. v. Drexel, 90 N. Y. 87; Rev. St. U. S. secs. 649, 700, U. S. Comp. St. 1901, pp. 525, 570; Calder v. Crowley, 74 Wis. 157, 42 N. W. 266; Thompson v. Brennan, 104 Wis. 564, 80 N. W. 947; Sabotta v. Insurance Co., 54 Wis. 687, 12 N. Y. 18; Calder v. Crowley, 74 Wis. 157, 42 N. W. 266; Plankington v. Gorman, 93 Wis. 560, 67 N. W. 1128; Richter v. Leiby's Estate. 101 Wis. 434, 77 N. W. 745; German Savings Bank v. Bates, 111 Iowa 432, 82 N. W. 1008; Hartford Life Ins. Co, v. Unsel, 144 U. S. 439; Schwinger v. Raymond, 105 N. Y. 648; Peak v. Bell, 7 Hun. 454; Hodges v. Easton, 106 U. S. 408.

The defenses of payment and release of one party is

available to the defendants on this appeal. Mines v. Bank, 2 Ala. 294; Rogers v. James, 33 Ark. 77; Smith v. Carley, 8 Ind. 451; Calahan v. Bank, 78 Ky. 604; Taylor v. Newman, 77 Mo. 257; Ketellas v. Meyers, 3 E. D. Smith, 83; Penn. Nat. Bk. v. Soap Co., 161 Pa. St. 241; Fisher v. Phelps, 21 Tex. 551; Frisch v. Caler, 21 Cal. 71; Stafford v. Davidson, 47 Ind. 319; Brown v. Brown, 11 Ky. Law. 579.

DOUGHERTY & GRIFFITH, JAMES G. FITCH for Appellee.

The findings having been submitted to the court below, the appellate court is limited in reviewing its action and the consideration of its correctness of the findings of law. Buettel v. Magone, 157 U. S. 154; Lehen v. Dickinson, 148 U. S. 71; Runkel v. Burnham, 153 U. S. 216; Empire State Mutual Co. v. The Atchison R. R. Co., 210 U. S. 1; Bankers' Mutual Casualty Co. v. State Bank of Goff, 150 Fed. 78; City of Defiance v. McGongle, 150 Fed. 689; Insurance Co. v. Wisconsin Central Ry., 134 Fed. 794; Phoenix Insurance Co. v. Kerr, 129 Fed. 723; Kutz v. Peck, 113 N. Y. 226; Sutter v. Vandeveer, 122 N. Y. 652; Stanford v. McGill, 38 L. R. A. 775 and cases cited.

The binding effect of a note cannot be affected by contemporaneous parole agreement that it need not be paid. Payne v. Mutual Life Insurance Co., 141 Fed. 339.

In an action for deceit the plaintiff must set out the representations and allege the falsity thereof. Enc. Pl. & Pr., 906 and cases cited, 897 note 5, 902 and cases cited, 899, 912; Goming v. White, 33 Ind. 175; Hoffman v. Hoffman, 33 Ind. 172; 20 Cyc. 13; Holmes v. Clark, 10 Iowa 424; Specht v. Allen, 12 Ore. 117, 6 Pac. 494; London Etc. Insurance Co. v. Liebes, 105 Calif. 203; Sample v. Hager, 27 Calif. 165; Williams v. McFadden, 23 Florida 143; Hayes v. Otto, etc., R. Co., 61 Ills. 425; Haynes v. Berlam, 94 Ind. 311; Smith v. Rosebum, 13 Ind. App. 287; Crane v. Elder, 48 Kans. 259; Bayard v. Holmes, 34 N. J. Law 297; Star Steamship Co. v. Mitchell, 1st

Abbots Prac., N. Y. C. Pl. 402; Ming v. Woolfolk, 116 U. S. 599; Marshall v. Hubbard, 117 U. S. 416; Stratton v. Dines, 126 Fed. 978; 20 Cyc. 42; First National Bank v. Maxfield, Me., 22 At. 479; Parker v. Jewitt, Minn. 55 N. W. 56.

The proof must correspond with the allegations of the pleading. 28 Amer. Enc. Law, 1st ed. 58; Pomeroy on Code Pleadings, secs. 448-452; Owen v. Meade, 104 Calif. 179, 37 Pac. 923; Winterburg v. Winterburg, 52 Kan. 402, 34 Pac. 971; Dickey v. Northern P. Ry. Co., 19 Wash. 350, 53 Pac. 347; Kelley v. Cable Co., 13 Mont. 411, 34 Pac. 611; Noland v. Great Northern Ry. Co., 71 Pac. 1098, Wash.; Agers v. Wolcott, 92 N. W. 1036, Neb.; Central R. R. & Bank Co. v. Hotkiss et al., 17 S. E. 838, Ga.

The plaintiff having chosen to sue them all, he could at any time take a non-suit as to one or more. Code of Civil Procedure, sec. 2685, sub-sec. 7; Enc. Pl. & Pr., vol. 6, pp. 834, 835; United States v. Parker, 120 U. S. 95; Gardiner v. Mich. Central Ry., 150 U. S. 356; Manhattan Life Ins. Co. v. Broughton, 109 U. S. 124.

Common law plea of "Puis Darrein Continuance." Smith v. Carrol, 12 L. R. A. 301; Yeaton v. Linn, 5 Peters 224; Longworth v. Flagg, 10 Ohio Rep. 301; Hall v. Olney, 65 Barber 27; Vol. 1, Enc. Plead. & Prac. 576, 577 and notes.

It is not incumbent upon the plaintiff to aver non-payment, and the fact of payment is new matter and must be specifically pleaded. Pomeroy on Code Remedies, sec. 576; Bates on Pleadings, Parties and Forms, vol. 1, p. 305; Bliss on Code Pleading, secs. 357, 358 and cases cited; Glasscock v. Ashman, 52 Cal. 495; Heglar v. Eddy, 53 Cal. 597; McKyring v. Bull, 16 N. Y. 297, 69 Am. Dec. 696; Hummel v. Moore, 25 Fed. 380; Ferguson v. Davidson, et al., Mo., 59 S. W. 88; M. & I. Bank v. Child, Minn., 78 N. W. 1048; Mullen v. Morris, Neb., 62 N. W. 74; Cady v. S. Omaha Nat'l Bk., Neb., 65 N. W. 906; C. I. & W. Power Co. v. Cox, Neb., 1897, 73 N. W. 9; Mealing v. Togerton L. Co., Wis. 1902.

## STATEMENT OF THE CASE.

The plaintiff bank brought suit upon two notes. These are identical in form except that the first is for ten thousand dollars, and the second for only five thousand. On the latter note a credit is alleged of fifteen hundred dollars on April 16, 1908. The first of these notes is as follows:

"$10,000.00    Albuquerque, New Mexico, April 9th, 1908.

On demand after date (without grace) we jointly and severally promise to pay to the order of the Bank of Commerce, at the office of said Bank, in Albuquerque, New Mexico, Ten Thousand & No-100 Dollars with interest at the rate of ten per cent per annum from date until paid, principal and interest payable in United States Gold Coin, for value received, and if the same shall not be paid when due, we jointly and severally agree to pay all costs of collection, including reasonable attorney's fees, if suit be brought on this note, or if attorneys are employed to collect the same.

G. P. ANDERSON,

CHAS. LEWIS,

H. EVANS,

J. N. BROYLES,

FRANZ SCHMIDT & STORY,

CHAS. M. CROSSMAN,

E. W. BROWN."

G. P. Anderson one of the signers of the notes is impleaded as William E. Pratt, that being apparently his real name. The defendant Broyles suffered default. The remaining defendants answered, alleging in substance that they received no consideration for the notes and were merely accommodation signers thereon for the defendant Broyles; that their signatures were obtained by certain false and fraudulent representations made by plaintiff, which representations were in effect *first,* that the defendant Broyles was solvent and amply able to pay off all his just debts and liabilities, and *second,* that said notes were amply secured by collateral deposited by Broyles with plaintiff bank. There were also allegations that at the time the defendants signed the notes plaintiff promised that Broyles

could and would take care of them and defendants would never hear of them again. It was also alleged that the date of payment was at that time left blank and the defendants were falsely and fraudulently informed by plaintiff that Broyles was to be given such time as he might require to pay the indebtedness and that defendants were left in ignorance that the notes were to be made payable on demand. A reply put the new matter at issue and the case was tried to a jury. On the trial, testimony was received on behalf of both plaintiff and defendants and at the close of the case in rebuttal plaintiff moved for an instructed verdict. The defendants did the same. The court thereupon announced that it sustained the motion of plaintiff as against all of the defendants except Lewis. Upon this announcement the plaintiff dismissed as to Lewis and the jury by direction of the court then brought in a verdict against all of the remaining defendants for the full amount claimed in the complaint. A motion for a new trial was overruled and judgment entered pursuant to the verdict. Defendants thereupon appealed.

## OPINION OF THE COURT.

POPE, J.—(After making the foregoing statement of fact.). The chief assignment of error is that there was an issue of fact which the court should have sent to the jury. At the outset we are met by the contention of appellee that this alleged error of the court in withdrawing the case from the jury cannot be considered because both sides requested a peremptory instruction and must therefore be considered as having stipulated that there was no issue of fact for the jury. The record upon this point, as above partially indicated, shows that upon the close of the testimony plaintiff moved for an instructed verdict because the defense as pleaded was not sufficient and was not permissible under nor in conformity with the pleadings. Defendants likewise moved for a peremptory instruction, their ground being that the notes were signed in blank with the understanding that they were to run from four to six months and that having been filled out on demand they were therefore not collectable under sec-

tion 14 of the Negotiable Instruments Act of 1907. Upon the announcement of the court that it sustained the motion for a peremptory instruction against all of the defendants but Lewis and after the court had permitted a nonsuit as to the latter, the defendants insisted that "not only Lewis but his co-defendants are entitled to a decision at the hands of the jury in this case." This contention was overruled, and a verdict against the defendants, except the defendant Lewis, instructed by the court. We are of the opinion that upon this state of the record the request by both sides for a peremptory instruction does not preclude the assignment of error made. It is true that in Buettell v. Magone, 157 U. S. 154, it was said:

"As, however, both parties ask the court to instruct a verdict, both affirmed that there was no disputed question of fact which could operate to deflect or control the question of law. This was necessarily a request that the court find the facts and the parties are therefore concluded by the findings made by the court upon which result the instruction of law was given."

We deem the full import of this holding developed, however, by the recent case of Empire State Company v. Atchison Company, 210 U. S. 1, where it was said:

"It was settled in Buettell v. Magone, *supra,* that where both parties request a peremptory instruction, and do nothing more, they thereby assume the facts to be undisputed, and in fact, submit to the trial judge the determination of the inferences proper to be drawn from them; but nothing in that ruling sustains the view that a party may not request a peremptory instruction, and yet upon the refusal of the court to give it, insist, by appropriate requests, upon the submission of the case to the jury where the evidence is conflicting or the inferences to be drawn from the testimony are divergent."

In McCormick v. National City Bank, 142 Fed. 132, it was pointed out that Buettell v. Magone was a case where there was no disputed question of fact, and it was there stated:

"The decision in that case should not be extended to

cases in which there are disputed questions of fact nor to cases in which the parties ask other instructions in the event the peremptory instructions asked by them respectively are not given."

So in Minehan v. G. T. Ry., 138 Fed. 37, it was said:

"But it would seem that the decision [Buettell v. Magone] cannot be regarded as furnishing a rule for cases where the evidence is conflicting and where the party whose request is refused has coupled with his request other requests directed to particular aspects of the case which repel the implication that the party had consented to a submission of the facts to the court."

We think the language used by defendants' counsel after their request for a peremptory instruction had been denied was equivalent to a demand for a jury and, in the language of the case last quoted, repelled "the implication that the party had consented to a submission of the facts to the court," and constituted, under Empire State Company v. Atchison Company, *supra*, 'an insistence by appropriate requests upon the submission of the case to the jury.'

Believing, therefore, the question properly before us, we proceed to determine whether the court upon the testimony erred in withdrawing the case from the jury. The rule in such matters, to quote further from Empire Company v. Atchison Company, *supra,* is that the case is one for a jury where the evidence as to liability is conflicting or the inferences on that subject to be drawn from the testimony are divergent. Or as it is stated somewhat differently in McGuire v. Blunt, 199 U. S. 142:

"It is clear that where the court would be bound to set aside a verdict for the want of testimony to support it, it may direct a finding in the first instance and not await the enforcement of its view by granting a new trial."

Was there any view of the testimony under which the defendants or either of them could properly have been awarded a verdict by the jury? The defense, as we have seen, was principally that the signing of the notes was procured by fraud. There was undoubtedly evidence

that the defendants Anderson, Evans, Brown and Lewis were told by plaintiff's representative prior to signing the notes that Broyles was solvent and were further told that plaintiff had ample collateral for the notes, and there was also evidence from which the jury might have concluded that the defendants signed the notes in reliance upon these representations. We find also upon the record room for a conclusion by the jury that these statements were untrue and that they were known when made to be untrue. Indeed the trial court recognized this, for as to Lewis, in whose favor the testimony on this point was no stronger than on behalf of Anderson, Evans and Brown, the court held that the matter was one for the jury. Eliminating therefore Lewis, as to whom there was a dismissal and the defendants Schmidt, Story and Crossman, in whose favor there was no testimony as to representations inducing their signature, was there ground for a verdict relieving from liability either Anderson, Evans or Brown? The testimony shows that the notes sued on, together with an additional one of ten thousand dollars of the same date and not here in controversy, took the place of overdue notes of precisely the same amounts and tenor, dated November 20, 1907, signed by Broyles, Anderson, Evans and Brown. Upon the giving of the present notes these former notes were surrendered by plaintiff bank and destroyed. No suggestion was made either on the trial or upon the argument before us that these first notes were not valid obligations of these three defendants nor that in retiring them by the new notes of precisely the same amounts defendants were not simply ridding themselves of a perfectly valid outstanding obligation of as great an amount as the new notes signed. Applying these undisputed facts to those which the proofs left in controversy, were these defendants defrauded in the making of these notes? Were actionable fraudulent representations simply the making of false statements knowingly to another whereby the latter is led to act, there would doubtless be here a case for the jury. But there is of course a further essential element. The party must have been led to act *to his injury.* As stated in Randall v. Hazelton, 12 Allen 412, quoting 3 Bulst 95:

"It is an ancient and well established legal principle that fraud without damage or damage without fraud gives no cause of action; yet when the two do concur there an action lies."

So in 1 Story's Eq. Jur., Section 203.

"The party must have been misled to his prejudice or injury, for courts of equity do not any more than courts of law sit for the purpose of enforcing moral obligations or correcting unconscientious acts, which are followed by no loss or damage. It has been very justly remarked that to support an action at law for a misrepresentation there must be a fraud committed by the defendant and a damage resulting from such fraud to the plaintiff. And it has been observed with equal truth by a very learned judge in equity, that fraud and damage coupled together will entitle the injured party to relief in any court of justice."

So in Morrison v. Lodds, 39 Cal. 385, it is said:

"It is well settled that a party to a contract cannot rescind or avoid a contract on the ground of a false representation of the other party unless he shows in addition to the false representation that he will be damaged by the performance of the contract."

In Story v. Conger, 36 N. Y. 673, 93 A. D. 546, it was said:

"Upon his own statement of the contract the defendant has done no more than he was legally bound to do. If unjust or immoral means have been resorted to to induce him to perform that duty there is no remedy. In its result the case stands where and as it ought to stand."

In a later case from the same state, Deobold v. Oppermann, 111 N. Y. 531, 7 A. S. R. 760, it was held that there was no legal loss when the parties were "subjected to a liability which they agreed to assume in the event which is now alleged as the cause of their misfortune."

In First National Bank of Skowhegan v. Maxfield, 22 Atlantic 479, the Supreme Court of Maine went to the extent of holding that a mortgage securing a just debt, even if obtained by fraud, was enforcible, the following being the language:

"The payee by giving such mortgage merely secured his own debt and the representation to him by the bank as an inducement to give the mortgage that the bill was unpaid if untrue is harmless and not fraudulent."

Further authority to the same effect will be found in Ming v. Woolfolk, 116 U. S. 599; Parker v. Jewett, Minn., 55 N. W. 56; Pheteplace v. Eastman, 26 Ia. 446; Michigan v. Phoenix Bank, 33 N. Y. 9; Marriner v. Dennison, Cal., 20 Pac. 386; Snyder v. Heagan, 40 S. W. 693; and cases cited to support the text in the following reference works: 17 Ency. P. & P. 814; 20 Cyc. 42; 14 A. & E. Ency. Law, 2nd ed., 137, et seq.

We deem the present case well within the rule above declared. Even assuming the notes to have been given as the result of a wilful misrepresentation they added no new burden to these defendants. The latter were obligated thereby to no greater duty than previously rested upon them. What they are called upon to do as a result of giving the notes they were equally under obligation to perform before the notes were given. Applying the test in Morrison v. Lods, *supra,* they will "not be damaged by the performance of the contract," and under the rule in Story v. Conger, *supra,* "the result stands where and as it ought to stand," and under the rule in Deobold v. Oppermann, *supra,* they are in the matter of results simply "subjected to the liability which they agreed to assume." Upon the undisputed facts, therefore, the jury could not have found for the defendants and the trial court was right in so holding.

It is further claimed that the cause should have gone to the jury upon an issue as to whether the blank in the note as to time of payment had been filled in differently from what was agreed to at the time of signature. The testimony for the defense taken over objection that it was not warranted by the pleadings was to the effect that the time in the notes was left blank when they were signed and that it was the agreement that these were to be filled in at six months. The plaintiff's testimony in rebuttal was that the notes were filled out payable on demand, before signature. But while this was over plaintiff's objection,

made an issue on the proofs, it is not so upon the pleadings. We find nothing in the answer having the semblance of the defense that the notes were altered after signature or that they were filled in contrary to what was agreed at the time. It is true that the answer alleges the understanding to be that Broyles was to be given such time within which to pay the debt "as he might require." But this allegation would seem to go rather to the manner of enforcing collection than the form of the obligation. At most it was an allegation of an undertaking that the notes should be finally filled in for payment when Broyles got ready. But an allegation of even such an improbable provision for a promissory note is a different matter from that here quoted to the effect that the note was to be filled in at six months. It needs no argument to demonstrate the difference between an agreement to exact payment. at a time indefinite and one at six months. Neither is the matter aided by the further allegation in the answer that the defendants "were left in ignorance of the intention to make the note payable on demand." Manifestly ignorance of an intention to make notes payable on demand is not tantamount to an agreement that they should be dated at six months. We are of the opinion therefore that this defense was not open to the defendants upon their pleadings and that the trial court did not therefore err in withholding from the jury the determination of an issue not properly before it. It is urged however by the appellants that the court admitted proof upon this question over plaintiff's objection that it was not within the pleadings and that plaintiff not having taken an appeal from such ruling it should not be heard now to sustain the judgment upon a theory held against it on the trial. Morgan v. Southern Pacific Ry. Co., Cal., 17 L. R. A. 71, and Wrangler v. Swift, 90 N. Y. 38, are cited to support this position. But how could plaintiff appeal from an adverse ruling on the testimony? Appeals, of course, lie only from final judgments and that judgment was in its favor. The defendants were notified by repeated objections on the trial—their brief says "something like one thousand" —that the plaintiff relied among other things upon defects

in the pleading. Indeed one of the grounds of plaintiff's very motion to instruct, which the court sustained, was that "the defense is not admissible under the state of the pleadings and does not conform thereto and the issues which have been raised thereby are not issues which have been raised by the pleadings." This was a further and definite notice that inadequacy in the pleadings was claimed as against defendants' contentions. The latter therefore in failing to amend proceeded at their peril and cannot now be heard to complain because the terms of their answer failed to justify the submission to the jury of an issue upon which defendants desired the jury's judgment. The rule that proof must be based upon pleadings is too well established to be made to yield to the contention here made.

The same observations apply to several other defenses which defendants complain the court, by giving the peremptory instruction, failed to entertain. It is contended that the notes sued on were materially altered after signature by certain of the makers, by the addition of other parties thereto. But such a defense is not even remotely hinted at in the answer. It is stated that the court failed to give credit for four payments, one made before the note was given, the other three all since the suit was brought. Clearly however, the first could not have been a payment on this note and equally clear is it that in the absence of the proper plea these last were not matters for consideration. Even if, contrary to the current of authority, it be said that the code system permits proof of payments under the general issue, it is clear that such proof is restricted to payments before and not after suit. Glasscock v. Ashman, 52 Cal. 495; Heigler v. Eddy, 53 Cal. 597.

These latter must be set up by answer in the nature of a plea *puis darrein continuance*. The universal rule is stated in Philips on Code Pleading, section 363, where it is said:

"Payments made pending the action can be asserted only as new matter and by means of a supplemental pleading."

Some reference is made to the payment of one thousand dollars alleged to have been made between the execution of the note and the filing of the suit but aside from the matter of the absence of any answer setting up such payment we discover in the record no testimony that would have justified a finding that such payment was made.

The only remaining assignment of error that we deem material is the contention that the granting of a non-suit as to the defendant Lewis operated as a discharge of the remaining defendants. The plaintiff however had a right under Compiled Laws 2908 to dismiss as to Lewis, the cause not having been submitted to the jury. This dismissal was simply a discontinuance of the action, not a discharge of the party. The obligations sued on both by their terms and by Compiled Laws 2894 were several. We fail to see how a non-suit as to Lewis affected the liability of his co-defendants, nor do we see how under the record it could have resulted to their benefit for his portion of the case to have been carried forward to verdict. The judgment is affirmed.

Associate Justice Mechem did not hear the argument and took no part in the decision.

## ON REHEARING.

### SYLLABUS.

1. If defendants had signed notes after the signatures of other co-signers against whom fraud was practiced had been attached to the same, and if the latter be relieved from liability thereon, then such fraud makes the notes voidable as to the former, though they did not participate in, and were ignorant of, such fraudulent conduct at the time they signed the note.

2. However, if the signers against whom fraud was practiced signed the notes after their execution by their co-signers, and these latter executed the notes with no contemporaneous agreement of any kind that such notes were to have further or other signers, the release of any subsequent co-signers, because of fraud in the obtaining of the signatures of such subsequent co-signers, does not disturb

the equality of burden as to the original signers, and it was incumbent upon these original signers to prove injury to themselves because of the fraud practiced upon their subsequent co-signers in order to relieve themselves from liability because of such fraud. The record in the case at bar fails to do so.

### OPINION OF THE COURT.

WRIGHT, J.—The original opinion filed in this cause shows that there was an issue of fact as to whether or not the defendant Charles Lewis had signed the note sued on as a result of fraud. As pointed out in that opinion the trial court recognized the existence of the issue and was about to send the case to the jury as to the defendant Lewis when plaintiff dismissed its action as to him, resulting in a judgment for plaintiff against the remaining defendants. The original opinion filed in this cause holds that the plaintiff had the right to dismiss as to Lewis and to proceed against the other defendants. The attention of the court, however, is called by a motion for a rehearing to a contention raised upon appellant's brief but not dealt with by the court, which contention appellant claims is decisive of this appeal. It is to the effect that assuming, as the trial court held and as this court has also held in the original opinion, that Lewis, one of the signers, was induced to sign by fraud, then this fact whether Lewis was or was not a party to the suit or whether judgment was or was not sought against him, constitutes a defense to the action available to the other signers under Section 55, of the Negotiable Instrument Act. (Laws of 1907, Ch. 83, Sec. 55.) Impressed with the importance of this contention the case was restored to the docket for further argument and has therefore been reargued to the court upon this point.

Section 55, of the Negotiable Instrument Act, is as follows: "The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, *or any signature thereto*, by fraud, duress, or force, fear or other unlawful means or for an illegal consideration or when he negotiates it, breach

of faith, or any such circumstances as amount to a fraud."

The only cases bearing upon this section so far as cited in the briefs and so far as disclosed in Brennan's Negotiable Instrument Law (ed. of 1911) are from Wisconsin, being the cases of Hodge v. Smith, 130 Wis. 326, 110 N. W. 192, and Aukland v. Arnold, 13 Wis. 64, 11 N. W. 212. In both of these cases it is held that where one of the signatures is obtained by fraud it is a defense available to all signers. In the latter case, after quoting the Wisconsin section which embodies in precisely the same language that is contained in our Section 55, it is said: "The first clause of this section was considered and interpreted in the recent case of Hodge v. Smith, 130 Wis. 326, 110 N. W. 192. It was there held that the title of a person who negotiates commercial paper is defective when he has obtained any signature thereto by fraud, and that if the parties so defrauded be relieved from liability thereon, then such fraud makes such paper voidable by all other persons who signed it, though they did not participate in and were ignorant of such fraudulent conduct at the time they signed it. This conclusion was reached upon the ground that, when several persons assumed such an obligation it is material and important that all who join as makers should share equally in bearing the burden of its payment, and if, through the fraud of the person holding it, such equality of burden is disturbed and the burden increased as to some of the persons signing it, such fraud renders the title defective as to all of the persons who signed it."

For an intelligent understanding of the effect of this section of the Negotiable Instrument Law upon the case at bar it is necessary to make a further brief statement of the facts supplementary to that contained in the original opinion. The complaint sets out in full the notes sued on with the usual allegations of nonpayment, etc. The answer, after denying any indebtedness on account of said notes, sets up fraud in the obtaining of certain of the signatures to such notes thereby seeking to avoid liability as to each and every one of the defendants. The sufficiency of the allegations of fraud was questioned in the lower court. This question however was disposed of in the

original opinion and will not be discussed further upon a rehearing.    Upon a trial of the issues the plaintiff introduced the notes in evidence, proved that the same were due and unpaid and then rested.    The defendants then offered evidenece to show that the signatures of three of the defendants, and particularly the defendant Lewis, were obtained by the plaintiff through fraudulent representations.    It developed in the course of the trial that the signatures of the defendants Broyles, Schmidt, Story and Crossman were placed upon the notes at one time and that those of the defendants Lewis, Anderson and Evans at a later date after the notes in question had been sent up to Albuquerque and either sent back to Broyles or brought by the witness Johnson, the agent of the plaintiff.    It also appeared from the evidence, as stated in the original opinion, that the defendants Brown, Evans and Anderson had previously signed notes for Broyles for similar amounts and that the notes involved herein were executed for the purpose of taking up the former notes.    There is no evidence whatever in the record as to whether the defendants Schmidt, Story and Crossman or any of them had any knowledge that there were to be any other signers than themselves.    There is a complete silence in the record as to whether they knew anything about Lewis, Evans, Anderson or even Brown as co-signers of these notes.    In discussing the effect of fraud upon the signers of a note it is held in the original opinion that the defense of fraud alleged and proven in the case at bar is not available where the instrument induced by fraud simply retires a pre-existing valid obligation of the same amount and of like tenor and this for the reason that such signer has not in contemplation of law been misled to his injury. We are of the opinion that the section of the Negotiable Instrument Law (cited) does not change this rule, nor is there anything in the two Wisconsin cases (cited) which is in conflict with the rule laid down in the original opinion.    It only remains to consider what effect, if any, the fraud practiced upon other co-signers had upon the defendants Schmidt, Story and Crossman who were *new signers* upon the notes involved herein.    It is apparent from the record

that the defendants Schmidt, Story and Crossman having established the fraud as to Lewis, relied upon the provisions of Section 55, of the Negotiable Instrument Act, to relieve them from liability without any necessity on their part of any further showing of injury to themselves. If Schmidt, Story and Crossman had signed the notes after the signatures of the other co-signers against whom fraud was practiced had been attached to the same, it is undoubtedly true under the reasoning of the court in the Wisconsin cases that they should have rested without any further showing of injury, since the release of any of such co-signers would have disturbed the equality of the burden as to them, (namely, the defendants Schmidt, Story and Crossman) they having the right in the absence of any proof to the contrary, to assume that each and every one of the signers of the note who signed before them signed the same unconditionally and that each signer in event of the other having to pay for said note would be liable to the same extent as they themselves.

In the case at bar, however, the signers against whom fraud was practiced signed the notes several days after their execution by Schmidt, Story and Crossman. So far as the record in this case shows the notes were complete and binding obligations upon Schmidt, Story and Crossman at the time they executed the same with no contemporaneous agreement of any kind that such notes were to have further or other signers. Such being the terms of their contract the release of any subsequent co-signers, because of fraud in the obtaining of the signatures of such subsequent co-signers, would not disturb the equality of burden as to Schmidt, Story or Crossman. It was incumbent therefore upon the defendants Schmidt, Story and Crossman to have proven injury to themselves because of the fraud practiced upon their subsequent co-signers in order to relieve themselves from liability because of such alleged fraud. This they failed to do so far as the record in this case discloses. Except as herein modified, the original opinion is therefore adhered to.