336 P.2d 1051

Monico S. ABEYTA, Plaintiff-Appellant,

v.

ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a Corporation, Defendant-Appellee.

No. 6416.

Supreme Court of New Mexico.

Feb. 23, 1959.

Rehearing Denied April 6, 1959.

Joseph L. Smith, Henry A. Kiker, Jr., Albuquerque, for appellant.

B. G. Johnson, R. G. Cooper, Albuquerque, for appellee.

SADLER, Justice.

The plaintiff below appears as an appellant before this Court complaining of a judgment of the district court of Bernalillo County rendered against him on the verdict of a jury in an action in which he sought damages in a substantial amount under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq., for injuries said to have been suffered by him while working as a car inspector for defendant at Belen, New Mexico, on June 4, 1955.

On the date mentioned, the plaintiff as member of a three-man crew of car inspectors had gone to Track 10 in the Belen yards, preliminary to inspecting the brakes and mechanical equipment on a freight train, approximately 110 cars long, each car being 55 to 60 feet in length. The Belen yards contain 21 tracks, all running north and south and each is assigned a number, running consecutively from the west to the east.

After reaching Track 10, a fellow car inspector, Matt Baca, proceeded north to the end of a train, still in process of being coupled together, or "made up" at the time the inspection crew arrived at the track. Another member of the crew, Albert Perry, had gone to the center of the train, it being plaintiff's duty to inspect the south part, or caboose end of the train. The car inspectors were not supposed to commence their work until all the cars were coupled together and the train completely made up; and not alone until all cars had been coupled together but, in addition, until blue flags had also been posted on the engine and caboose (indicating no part of the train should be coupled to or moved).

The making up process consumed about 35 or 40 minutes after arrival of plaintiff at Track No. 10 on the early morning in question. Since the making up, or coupling of the train is completed by the attachment of the caboose to the last car of the train, it becomes the duty of the car inspector working the rear end of the train to give the inspector at the head end of the train a "made-up" signal when the caboose has been attached. This he ordinarily does, in fact always does, by relaying his "made-

up" signal through the inspector on duty at the middle of the train to the man at the head of the train. In other words, there is no signal directly from the rear inspector to the head inspector, unless for some unexplained reason, there happens to be no middle man on duty. There was such a middle man on duty on this occasion.

The made up signal is given by lantern during the hours when it is dark, as it was on the occasion in question. According to testimony of a climatologist for the United States Weather Bureau the sun did not rise at Belen on the day of plaintiff's injury until 4:54 a. m. However, there was a period of "civil twilight" preceding sunrise described as "the period before sunrise during which normal outdoor activities can be carried on without artificial light." It starts out with the light being dim, then growing progressively brighter. It was still dark at 4:25 a. m. on the day in question.

There were flood lights in the Belen yard, erected atop poles approximately 85 feet in height, but it was necessary for car inspectors to use flashlights or lanterns to perform their work. Such artificial lights were issued by defendant to car inspectors working night shifts.

About the time the task of making up the train to be inspected was completed, car inspector Perry had started a fire with some oily waste he had found along the track.

Plaintiff testified he was not able to get the made up signal through to Matt Baca at head of the train because the fire was in his line of vision and made it impossible for him to see or acknowledge such signals. Plaintiff's testimony in this regard was supported by Matt Baca at head of the train. Perry, though admitting he had started the fire, minimized its size and as well its nearness to Track 10, saying it was only a small amount of oily waste which he found lying along Track 8 to which he lighted a match.

According to plaintiff, because of his inability to signal by or through the fire, he stepped west from Track 10, to Track 9, to signal around the fire. On Track 9, he was struck by an unlighted, unmanned box car, rolling free down the track and suffered the injury of which he complains. Both plaintiff and Baca, who, with Perry worked on the night shift, testified to having seen a bulletin posted, prohibiting the lighting of fires in the yard. Car inspector Perry, who worked on the night shift said he had no knowledge of any bulletin being posted as described by Baca and plaintiff. Nor did Perry think such a fire as he built, when and where he built it, would interfere with the vision of any one attempting to signal through the middle man to the head man of the train on Track 10.

During the progress of the trial, after the jury had retired, the jury sent the trial judge the following message, to wit:

"Dear Judge Reidy:

"We are hung on the point of whether the violation of the fire bulletin is, or can be considered as contributing to any negligence on the part of the Santa Fe. May we be advised?
"The Jury."

The trial judge did not answer the jury's inquiry.

Not once in his statement of facts does the plaintiff designate as a ground of negligence, the one here mainly relied upon. In his complaint, the plaintiff had charged, expressly, as negligence the allowance by defendant of a detached freight car to roll loose, "without lights, flags or a rider"; and, that as a consequence thereof the plaintiff was struck and injured when he stepped across Track 9 to signal the head inspector the train was made up and ready for the placing on it of blue flags, thereby to keep it from moving.

Paragraphs 3 and 4 of the complaint, so far as material, read:

"3. That on or about the 4th day of June, 1955, at about 4:30 A. M., the plaintiff was attempting as part of his duties to signal the car inspector at the head of a train which he was to inspect and which was located on track 10 near Belen, New Mexico; that in attempting to signal the head car inspector so that blue flags could be placed upon the train and thereby keep the train from moving, the plaintiff stepped back across track 9. That the defendant at that time negligently allowed a freight car to roll loose without lights, flags or a rider and the plaintiff was struck by said freight car and received severe injuries to his back and internal organs.

"4. That as a proximate result of the negligent failure of the defendant to furnish the plaintiff a safe place to work and in failing to furnish adequate help and to properly supervise its car, the plaintiff has received severe, permanent and painful injuries as hereinbefore described * * *."

In their opening statement to the jury, one of counsel for the plaintiff said:

"* * * and the evidence will further show that while he was so engaged in discharging his duties that the Santa Fe Railroad failed to provide him with a safe place to work, and that as a result of its negligence in failing to provide him with a safe place to work, and that while he was engaged in the operation of signalling to the head car inspector at the head of the train, some 110 or 120 cars ahead of him on the north side, he was struck by a car on an adjacent track, and that this car was negligently released; *and that the railroad for that reason,*

*failed to discharge its duty to provide a safe place to work for Mr. Abeyta.*

\* \* \* \* \* \*

"We will also by our evidence show that this was the result of the direct and actionable negligence of the Santa Fe Railroad, in failing to provide him with a safe place to work. The evidence we will introduce will also show that the Santa Fe Railroad failed to provide a sufficient number of employees in order to properly protect this plaintiff, Mr. Abeyta, in the discharge of his duties in the Belen Yards. \* \* \*" (Emphasis added).

Nowhere in the complaint or in his opening statement did the plaintiff point out or allege that the precise negligence here claimed to have resulted in his injury, to wit, a "fire," had any place or part in the unfortunate accident said to have been suffered by him. Counsel for defendant say it was plaintiff's theory below, as emphasized by the allegations of his complaint and by the seeming understanding of one of his own counsel when he made his opening statement to the jury, that the negligent releasing of the car to roll free, unmanned and unlighted down a track adjoining that on which plaintiff's train of cars stood, whereby he suffered injury when he stepped upon such track in the course of his signaling, was the negligence which constituted his surroundings an unsafe place to work, as well as being inherently negligent in and of itself.

In conformity with such an understanding of plaintiff's theory, counsel for defendant point out that at the first attempt of plaintiff to advance as a ground of negligence the "fire" about which plaintiff says so much in this Court, they interposed their objection to any testimony relative thereto as shown by the following excerpts from the record, to wit:

"Q. Well, what, if anything was there in the yard to keep people warm?

"Mr. Cooper: If the Court please, we object to the form of the question on two grounds. First, it's leading. There's no evidence to indicate that it was necessary to keep anyone warm. It's immaterial to any issue in the case.

"Mr. Smith: Well, if the Court please, it is one of the grounds of negligence in furnishing him with a safe place to work, that this particular line of testimony is offered for.

"The Court: Well, it may be remote, but I'll overrule the objection. Go ahead; repeat the question to him.

"Q. What, if anything was there in the yard to keep people warm that were working there? A. There was a fire.

"Q. Was it customary to light fires in the railroad yard?

"Mr. Cooper: Now, if the Court please, we object to anything concerning any fire. There is no allegation in the Complaint of which that might be an issue in this case, as to whether or not there was any fire or necessity for anyone to keep themselves warm by a fire in the yards.

"Mr. Smith: Well, if the Court please, we offer the testimony to show the establishment of a dangerous condition, going to an unsafe place to work, by the hazard of a fire lighted against the rules and permitted to burn."

After thus objecting to testimony concerning the "fire" as not being within the issue, and the trial court, seemingly, having denied defendant's objection thereto, counsel for plaintiff inquired of him and the following colloquy between the court and defense counsel occurred, to wit:

"Q. Could you see Mr. Perry at that time, when you want to give your signal? A. Not with that fire, not unless he would show his light.

"Q. Well, what do you mean 'not with that fire'? What, if any, effect did the fire have? A. That * * *

"Mr. Cooper: If the Court please, may we have our objection go to all the testimony with reference to the fire without renewing it each time?

"The Court: Yes, sir."

The cause went to the jury under a general charge and, after deliberation, the verdict was returned into court and filed. It was a general verdict in favor of the defendant upon which judgment in its favor was later entered. Prior to entry of judgment the plaintiff filed a motion for new trial alleging as error the single ground that the court erred in refusing plaintiff's specially requested instruction No. 7, touching liability of an employer for acts of its employee when done in the prosecution of the former's business, whether authorized or not.

The counsel for plaintiff as just indicated place main reliance for a reversal upon the trial court's refusal to give their specially requested instruction No. 7. It reads as follows:

"You are instructed that an employer is responsible for the acts of his employee if such are within the scope of his employment, without regard to the employee's motives, although the acts may be in violation of the employer's orders or instructions, and although they may have been expressly forbidden by the employer, and especially is this so where the employer knew, or should have known, that such acts were likely to be performed, and that damage to others would likely result. The test of the employer's responsibility for the acts of his employee is not whether such acts were done in accordance with

the instructions of the employer to the employee, but whether such were done in the prosecution of the business that the employee was employed to do, and an act is regarded as authorized in the legal sense if it is incidental to the performance of the duties entrusted to the employee, even though it is in disobedience of the employer's express orders and instructions."

The particular vice in the refused instruction, as viewed by plaintiff's counsel is well stated by his counsel, in his reply brief, as follows:

"The proposition sought to be advanced to the jury by the requested instruction was that where an employee acts upon his master's business for which he is employed, the master is responsible for his actions even though those actions may be beyond the servant's authority, or done in a forbidden manner."

On defendant's behalf, it is argued by its counsel, in their brief filed herein that the substance of the requested instruction is actually covered by other instructions in the court's general charge, hence a refusal was not error, citing Cunningham v. Springer, 13 N.M. 259, 82 P. 232, affirmed on other grounds, 204 U.S. 647, 27 S.Ct. 301, 51 L.Ed. 662; as well as Young v. New Mexico Broadcasting Company, 60 N.M. 475, 292 P.2d 776. It is also claimed by defendant that a portion of the refused

instruction was not warranted by the evidence.

■ However, in view of the conclusion we have reached on defendant's claim that instruction No. 7 was properly refused because it related to a ground of negligence not within the issues as pleaded in plaintiff's complaint, we find it unnecessary to determine whether it was a correct statement of the law or not. It was wholly immaterial under the issues as made up by the pleadings. 53 Am.Jur. 452, § 574, "Trial." See, also, Duncan v. Holder, 15 N.M. 323, 107 P. 685; Bank of Commerce v. Broyles, 16 N.M. 414, 417, 120 P. 670, reversed on other grounds, Schmidt & Story v. Bank of Commerce, 234 U.S. 64, 34 S.Ct. 730, 58 L.Ed. 1214; Riverside Sand & Cement Manufacturing Co. v. Hardwick, 16 N.M. 479, 120 P. 323; Rarey v. McAdoo, 28 N.M. 14, 205 P. 731; Federal Reserve Bank of Dallas v. Upton, 34 N.M. 509, 285 P. 494; Martin v. La Motte, 55 N.M. 579, 237 P.2d 923 (and cases cited).

In Bank of Commerce v. Broyles, supra [16 N.M. 414, 120 P. 674], we said:

"* * * We are of the opinion therefore that this defense was not open to the defendants upon their pleadings and that the trial court did not therefore err in withholding from the jury the determination of an issue not properly before it. *It is urged, however, by the appellants that the court admitted proof upon this question*

*over plaintiff's objection that it was not within the pleadings, and that plaintiff not having taken an appeal from such ruling it should not be heard now to sustain the judgment upon a theory held against it on the trial.* Morgan v. Southern Pacific Ry. Co., 95 Cal. 510, 30 P. 603, 17 L.R.A. 71, and Wangler v. Swift, 90 N.Y. 38, are cited to support this position. But how could plaintiff appeal from an adverse ruling on the testimony? Appeals, of course, lie only from final judgments and that judgment was in its favor. The defendants were notified by repeated objections on the trial—their brief says 'something like one thousand'—that the plaintiff relied among other things upon defects in the pleading. Indeed one of the grounds of plaintiff's very motion to instruct, which the court sustained, was that 'the defense is not admissible under the state of the pleadings and does not conform thereto and the issues which have been raised thereby are not issues which have been raised by the pleadings.' This was a further and definite notice that inadequacy in the pleadings was claimed as against defendants' contentions. The latter therefor in failing to amend proceeded at their peril and cannot now be heard to complain because the terms of their answer failed to justify the submission to the jury of an issue up-on which defendants desired the jury's judgment. *The rule that proof must be based upon pleadings is too well established to be made to yield to the contention here made."* (Emphasis ours.)

In Rarey v. McAdoo, supra [28 N.M. 14, 205 P. 732], an action based on negligence, this Court said:

"In support of his allegation that the injuries to the cattle resulted from negligent switching at Clovis, plaintiff introduced testimony to the effect that following the switching a corner of one of the cars was twisted or broken, and that a timber supporting the upper deck of another was loose or broken, while prior to that time these cars were in good condition. Appellant requested the court to instruct the jury in effect that the fact that this timber was found to be loose or broken after leaving Clovis could not be considered as proof of negligence, unless it resulted from a cause which could have been anticipated, or unless it might have been remedied more quickly than it was. *Irrespective of whether this instruction is a correct statement of the law in cases based upon such negligence, the fault in the requested instruction lies in its lack of application. The defective condition of the car was not the basis of this action. The negligence alleged was the improper handling of the cattle at Clovis."* (Emphasis ours.)

300

We think the trial court did not err in refusing the plaintiff's specially requested instruction No. 7. Not once in his requested instructions did he mention the "fire" made the basis of his argument here that defendant had failed to provide a safe place to work. In no way did he request the court to apply the law to the facts relating to the fire. True enough, counsel for the defendant might have moved to require plaintiff to be more specific in his claim with respect to this factor of negligence and did not just as plaintiff, at the trial, might have moved for leave to file a trial amendment, conforming his pleading to the proof of the fire, after defendant had objected to its admission, and he did not. Neither omission waives the fault now considered.

As a matter of fact, for aught plaintiff knew, the allegation upon which he relies as pleading the "safe place to work" doctrine was nothing more than a conclusion drawn by the pleader from the specific act of negligence actually set up—the kicked box car rolling down the track unmanned and unlighted. Compare, First National Bank of Santa Fe v. Ruebush, 62 N.M. 42, 304 P.2d 569.

Certainly, defendant would have been as warranted in relating the unsafe to work doctrine, as pleaded *generally,* to an act of negligence, specially pleaded, the loose box car, as plaintiff is in asking us to relate it to negligence in setting out of the fire— not pleaded as such at all.

We are not unmindful of the rule, cited by plaintiff's counsel, that a party is not confined in his evidence to the facts recited in the opening statement of his counsel. We do not use that statement for any such purpose but only explanatory of his counsel's apparent understanding of what they apparently thought the issues were right up to the start of the trial and as some justification for their failure to plead below, what they maintain here was the actual ground of negligence they say constituted plaintiff's surroundings an unsafe place to work.

We apprehend that when the true rationale of the "safe place to work" doctrine is ascertained it will be found to relate itself to a prevailing condition rather than to a single incident or factor which *of itself* might have been made a ground of actionable negligence. Whether this be so or not, we do not believe the doctrine may serve as a shield from behind which one can project on the day of trial unspecified acts of negligence of which even the pleader may have been ignorant when he prepared his complaint.

For this reason, as well as in conformity with the long established doctrine that one may not prove as actionable negligence over objection, what one does not consider important enough to plead, we think proof about the "fire" was properly ignored by the trial court in its instructions. It certainly went unnoticed by the plaintiff

in the instructions requested. It may not now find haven in this Court after having been so treated below.

It follows from what has been said that there was no error in denying plaintiff's requested instruction No. 7. This conclusion renders it unnecessary to determine other questions argued, ancillary to the main question decided. The judgment of the trial court will be affirmed.

It is so ordered.

LUJAN, C. J., and McGHEE, COMPTON and CARMODY, JJ., concur.